## Dowler Estate.

520

Argued September 24, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Gerald A. McNeils,* for appellant.

*Armin H. Friedman,* with him *J. Leonard Ostrow, Cecil D. Elfenbein* and *Ostrow & Elfenbein,* for appellee.

OPINION BY MR. JUSTICE LADNER, November 13, 1951:

Violet Dowler died December 16, 1947, intestate, leaving to survive her, the appellant, who was her husband, and children by a former marriage who are the

appellees. The appellant is also the administrator and surviving tenant by entireties of a property at 348 N. Third Street, in Erie.

At the audit the appellant sought contribution from decedent's estate of one-half of five obligations paid by him. Four of these arose out of the ownership of the entireties property and the other out of a bailment lease for a Frigidaire. The learned court below disallowed all five claims. As we have concluded there was error in so doing as to some of these claims, it becomes necessary to review each one separately. The facts being without dispute, the liability of the estate depends upon the proper application of the relevant principles of law.

1. The first claim is for one-half of the balance due on a purchase money mortgage of $4,000 executed by the appellant and the decedent at the time the mortgagors acquired title as tenants by entireties to the real estate on which it was secured, viz., 348 N. 3rd St., Erie. The mortgage and accompanying bond, jointly executed, are payable in instalments of $40.00 per month, and the balance due at the time of decedent's death, December 16, 1947, was $3,667.57. This sum was paid by the appellant and he sought to recover one-half thereof from the estate of his joint obligor. The learned court, holding that such claim could only be made against the estate if the equity in the mortgaged property was insufficient to discharge the obligation secured thereon (a situation absent in the instant case), dismissed the claim. This disallowance we conclude is error.

The case here is ruled in principle by *Kershaw Estate,* 352 Pa. 205, 42 A. 2d 538 (1945), where, as here, the decedent and his spouse had executed jointly a bond and mortgage on property held by them by entirety, and it was held that one-half of the mortgage and bond was a *deductible debt* in computing the inheritance

tax because to that extent the joint obligation was a debt of the estate of the deceased spouse. In so ruling, Mr. Justice HORACE STERN cogently said, (p. 206) "It is wholly immaterial that the mortgaged property, passing to the wife as surviving tenant by the entireties, did not constitute one of the assets of decedent's estate. The controlling fact is that he, together with his wife, was personally liable on the bond; that liability continued after his death and therefore constituted a debt of his estate . . . . Prima facie the payment of an indebtedness by one of two or more joint obligors is for the benefit of all, and the one making the payment is therefore entitled to contribution from the others." (p. 207)

What Mr. Justice HORACE STERN said was not mere dicta as thought by the learned court below, but the controlling principle upon which the case turned, and it is a matter of no moment that the question arose in an appeal from an inheritance tax appraisement rather than upon a claim against the estate. The same conclusion has been reached in other jurisdictions: see *Cunningham v. Cunningham,* 158 Md. 372, 148 A. 444 (1930) and *Nobile v. Bartletta,* 109 N. J. Eq. 119, 156 A. 483 (1931),* where the facts were practically the same as the instant case.

2. The next claim was based on a judgment note in favor of White Star Roofing Company for $467.97, dated August 1, 1947, signed by both the appellant and decedent. The balance due at the time of death was $428.97, which was paid by the husband appellant after wife's death and one-half, viz., $214.48, is now claimed from the wife's estate. In absence of any proof or agreement that the surviving spouse agreed to be

---

* See also satisfactory discussion of the subject by Judge VAN RODEN in *Long Estate,* 65 D. & C. 95 (1948) where the same principle was applied.

solely responsible this claim falls in the same category as the bond and mortgage and must be allowed.

3. Similar in character is another claim presented upon the assignment of Associate Discount Company of the promissory note signed November 11, 1947, in the amount of $154.20, also signed by both appellant and decedent. The note is payable to the order of the Storm Seal Company and by it assigned to the Associate Discount Company and by the latter assigned to the appellant. This claim must also be allowed to the extent of one-half thereof, viz., $77.10, for the same reason that the mortgage bond obligation and the White Star Roofing claim were allowed.

4. The appellant next presented a claim in the amount of $1,621.22, on a note originally held by the Security Peoples Trust Company. In neither the adjudication nor the opinion dismissing exceptions is there a clear statement of the facts relating to this claim. From the undisputed testimony it appears that during the lifetime of the decedent, Neth and Company wrote to the appellant (individually) under date of September 15, 1949, a proposal to install a gas furnace and ducts in the entireties property. It was to be financed by an F. H. A. loan through the Security Peoples Trust Company to which a credit application was made in the name of the appellant, again individually, but signed by *both* appellant and decedent. Neth's salesman, through whom the application was made, testified in explanation that where property is owned by husband and wife, F. H. A. requires both signatures to the application.

The work was commenced about a month before the wife's death, but not completed until *after* the wife's death. When the work was completed, the appellant (again individually) signed a judgment note dated January 5, 1948, and the money was then paid by the trust company to the contractor, Neth and Company. Neth

and Company made no claim against the estate. They were paid by the trust company out of money which it loaned to appellant on the judgment note signed by him *alone*. Two years later appellant paid off the loan together with the financing expenses, took an assignment from the trust company of the note and presented a claim for one-half thereof at the audit.

The burden of proof of this claim is of course upon appellant. In the face of the proposal made to and accepted by the appellant individually, we cannot infer that the deceased wife had contracted jointly with her husband to pay for this furnace when installed merely because she signed the credit application along with her husband. The most that can be inferred from the wife's signing the application is an expressed willingness to pledge her credit along with that of her husband if and when the loan was granted. But before the loan was granted, she had, in the meantime, died, and the loan was then actually granted to the appellant alone upon an obligation signed by him alone. The situation is therefore clearly different from other claims just reviewed and we hold the court below was correct in refusing to allow this claim.

5. Finally a claim was made by appellant for one-half of a balance of $200.59, due for unpaid rent instalments of a bailment lease for a Frigidaire signed by both the appellant and the decedent. This claim we conclude was properly disallowed because under the terms of the bailment lease title to the Frigidaire did not pass until all of the rent was paid: *Leitch v. Sanford Motor Truck Co.*, 279 Pa. 160, 123 A. 658 (1924); *Decker v. Williams*, 130 Pa. Superior Ct. 100, 196 A. 910 (1938). Thus title remained in the lessor at the time of decedent's death. Thereafter the appellant acquired title by completing the payments required by the bailment lease. The payments thus made by the ap-

pellant were solely for his own benefit and in order to secure title to the property leased. No benefit accrued to the estate and hence no enforceable obligation arose against it.

To summarize, the following claims must be allowed: one-half of the mortgage bond obligation $1,833.78, one-half of the roofing contract claim $214.48, one-half of the Storm Seal obligation $77.10, making a total of $2,125.36.

The decree of the court below is reversed and the record remanded to the court below with directions to have the schedule of distribution modified in accordance with this opinion, the parties to this appeal to pay their own costs.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I vigorously dissent.

Violet Dowler and her husband purchased a home and took title as tenants by the entireties. Upon her death all her title to and her rights in the property immediately and absolutely ceased; while *his title,* under a myriad of cases, *attached at and continued from the time he and his wife acquired title* as tenants by the entireties, and he is considered in law as the sole owner of this home from the time he and his wife purchased the property: *Zipperlein Estate,* 367 Pa. 622, 80 A. 2d 817; *Gallagher Estate,* 352 Pa. 476, 43 A. 2d 132; 41 C.J.S., p. 471; *Porobenski v. American Alliance Insurance Co.,* 317 Pa. 410, 411, 176 A. 205.

In *Zipperlein Estate,* supra, the Court in its opinion said (page 624) : "It is well established that where an estate is held by the entireties the husband and the wife do not each own a one-half share or any divisible part of the property, but both own the whole of it; each is seized per tout et non per my : Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624;

C.I.T. Corporation v. Flint, 333 Pa. 350, 5 A. 2d 126; Gallagher Estate, 352 Pa. 476, 43 A. 2d 132; Use of United States National Bank v. Penrod, 354 Pa. 170, 47 A. 2d 249."

In 41 C.J.S., page 471, the law is thus stated: "The effect of the death of one spouse is merely to free the estate from participation by that spouse. *The survivor takes by virtue of the original grant or devise;** he does not take a new or additional interest by virtue of survivorship, nor does he take by descent or intestate succession, or as devisee". As (the present Chief) Justice Drew, said in *Porobenski v. American Alliance Insurance Co.,* 317 Pa. 410, 411, 176 A. 205: . . . "the right of the survivor to the whole is considered as arising not from a new estate but from a continuation of the old: Stuckey v. Keefe's Ex'rs, 26 Pa. 397; Beihl v. Martin, supra; Gasner v. Pierce, supra."

It is clear from these authorities that in this case it is just as if the decedent and her husband jointly executed a mortgage and accompanying bond *on his home*; they also jointly signed a judgment note for a new roof on *his* home; and they also jointly signed a promissory note for storm windows on *his* home. This is not a claim by creditors who owned the aforesaid obligations; nor is the question whether half of the bond and mortgage is a deductible debt in computing inheritance taxes *(Kershaw Estate,* 352 Pa. 205, 42 A. 2d 538). This, we repeat, is a claim by a husband for one-half of the mortgage which he and his wife placed on his property and for one-half of the cost of the roof placed on his property and for one-half of the cost of storm windows installed in his property. As between a husband and wife, why should she or her estate have to

---

* Italics throughout, ours.

pay for one-half of her surviving husband's property? Is it not logical and just that a joint obligation of a husband and wife arising directly out of entireties property should be considered as between husband and wife to be an entireties obligation?

The allowance of the husband's claims (which incidentally deprive her children of any inheritance in their mother's estate) is not only inequitable, it is both startling and shocking.

The orphans' court is a court of equity and in the exercise of its limited jurisdiction it applies the rules and principles of equity: Orphans' Court Act 1917, P. L. 363, §22 (b), 20 P. S. 2602; *Douglas's Estate,* 303 Pa. 227, 232, 154 A. 376; *McCullough's Estate No. 2,* 292 Pa. 422, 141 A. 239; *Nimlet's Estate,* 299 Pa. 359, 149 A. 658; *Constable's Estate,* 299 Pa. 509, 149 A. 743.

In allowing contribution without any decisional or statutory authority in Pennsylvania to support them, the majority overlooked the fact that *the doctrine of contribution rests on principles of equity and natural justice* and will not be applied where these are lacking or where, as here, inequity and injustice result: 18 C. J.S., §2, p. 3.

There is still another reason why these claims of the husband should not be allowed. It is horn book law that a husband is primarily and, as between themselves, absolutely liable (unless expressly released) for a wife's necessaries: Cf. 41 C.J.S., §50, p. 508; *Waesch's Estate,* 166 Pa. 204, 30 A. 1124; *Conn's Estate,* 65 Pa. Superior Ct. 511; *Mitchell's Estate,* 79 Pa. Superior Ct. 208; *Melot's Estate,* 231 Pa. 520, 80 A. 1051; Hunter Pennsylvania Orphans' Court, Vol. 1, pp. 601, 602. What becomes of this principle of a husband's liability for necessaries, or isn't a home, a roof, or a window "a necessary"?

Moreover, under the facts in this case, is not the wife, in effect, an accommodation maker (since all her interest in the property terminated at her death) and as such, not liable to her husband for whom she became an accommodation party: Cf. Act of May 16, 1901, P. L. 194, Ch. I, Art. II, §28, §29, 56 P. S. 65, 66;. *Peale v. Addicks,* 174 Pa. 543, 548, 34 A. 201; *Com. v. Willstein,* 146 Pa. Superior Ct. 357, 22 A. 2d 613.

As between a husband and a wife, the surviving husband who owns a property held (until his wife's death) by the entireties should, in my opinion, in equity as well as in law, take it cum onere—all the obligations with all the benefits.

For these reasons I would dismiss the husband's claims for contribution and affirm the decree of the court below.